### ABSHIER et al. v. REAVIS et al.

### No. 2264.

Court of Civil Appeals of Texas. Beaumont.
Dec. 8, 1932.

Rehearing Denied Dec. 21, 1932.

David E. O'Fiel, of Beaumont, for plaintiffs in error.

P. C. Matthews, of Liberty, for defendants in error.

WALKER, C. J.

About 1880 or 1881 B. T. Moore made application to purchase from the state the northeast quarter of Washington County Railroad Company section survey No. 2 in Liberty county, Tex., and about the same time his son-in-law, J. P. Reavis, the appellee herein, made application to purchase the northwest quarter of this section. Both applications were granted, and both Mr. Moore and Mr. Reavis took immediate possession of the land awarded them. Soon after taking possession of his quarter section, appellee J. P. Reavis began improving it. He built his residence and barn on the northeast corner, and fenced a large tract of land on the eastern side of his quarter section. He began his fence at a stake in the north line of the section, and built south to a southeast corner. Later he extended this fence to a point in the south boundary line of the quarter sections. This fence was continuously maintained by appellee Reavis at the place where originally built from the time he built it in 1881 or 1882 to the date of the trial of this case in 1930. Appellee Reavis has been the owner of his quarter section continuously since it was awarded to him, making it his home and with most of it under fence. On the 25th day of March, 1901, B. T. Moore sold a tract of 91.5 acres off the west side of his quarter section to John Welsh. Moore described the Welsh tract of land as beginning 363 vrs. west of his northeast corner and extending west with the north boundary line of the section 418 vrs. for the northwest corner. The patent call for Moore's north boundary line was 799 vrs. from his northeast corner to his northwest corner. Thus it appears that Moore did not extend the Welsh tract to the northwest corner of his quarter section as located by the patent call for distance. By deed dated the 29th of October, 1901, Welsh, joined by his wife, sold his tract of land to Henry W. Pruter, and by deed of May 31, 1910, Pruter and wife sold the same tract of land to L. S. Boyd. By deed dated the 3d of May, 1917, Boyd and wife sold the same tract of land to appellant I. C. Abshier. About 1922 appellant Abshier filed this suit against Reavis and wife in trespass to try title on the theory that the fence built by appellee Reavis, as above described, encroached upon the land deeded by B. T. Moore to Welsh on March 25, 1901, and by his petition sought to recover against Reavis and wife the little strip of about 4½ acres lying west of Reavis' fence and east of the west boundary line of the Welsh tract as located by the call for distance. B. T. Moore died in 1913, after the death of his wife. In 1928 his surviving children and their heirs, other than Mrs. Reavis, joined with Abshier in his suit against Reavis and wife on the theory that Reavis had not only inclosed a part of the land deeded by Moore to Welsh, but also a small' strip of about 5 acres off the west side of the Moore quarter section between the Welsh tract and the eastern boundary line of the Reavis tract. By their answers Reavis and wife raised the issues of ten years' limitation and that they had agreed with B. T. Moore at the time they built their fence, as above described, upon the location of the boundary line between the two quarter sections, and that the line thus agreed upon by Reavis and Moore had been continuously recognized by all interested parties up to a short while before this suit was filed. These two issues were submitted by the court to the jury by four distinct special issues, all of which were answered in favor of appellees. Issues 3 and 4 were as follows, answered as indicated:

"Question No. 3: Prior to the death of B. T. Moore, did he and the defendant, J. P. Reavis, agree as between themselves, as to the location of the boundary line between their respective tracts of land, owned by them at the time, in the north half of Washington County Railway Company Survey, Section No. 2?" Answer: "Yes."

"Question No. 4: If you have answered the foregoing question No. 3, 'yes,' then was the boundary line agreed upon by said parties, namely, B. T. Moore and J. P. Reavis, where the dividing fence is now located on the ground between said two tracts of land?" Answer: "Yes."

Upon the jury's verdict judgment was entered in favor of appellees, fixing the boundary line between the two quarter sections as being the old fence erected by appellee Reavis in 1881 or 1882.

Opinion.

■ We overrule appellants' assignments that the verdict of the jury answering questions 3 and 4 was against the great weight and preponderance of the evidence and without support in the evidence. J. P. Reavis testified in his own behalf that he helped survey both quarter sections, and that he knew the exact location upon the ground of the dividing line between the two quarter sections and of the location upon the ground of the northwest corner of the Moore quarter section, which was the northeast corner of his quarter section; in 1881 he built his dwelling house and barn in the northeast corner of his quarter section; he began at the northeast corner of his quarter section, being the northwest corner of the Moore quarter section, and built a rail fence south on the dividing line between the two tracts, but not all the way to the south boundary line of the quarter sections; within two or three years, however, he extended his fence to the south boundary line

of the quarter sections, inclosing most of his tract of land; he continuously maintained the fence as thus located from the time it was originally built up to the time this suit was tried; he built the fence under an agreement between him and B. T. Moore that it was built on the dividing line between the two quarter sections. He testified further that Welsh, holding under Moore, recognized his fence as being on the dividing line between his tract and the Welsh tract; after Pruter bought from Welsh, he also recognized the fence as being on the dividing line, as did Boyd, and even appellee Abshier, until a short while before this suit was filed; he testified further that none of his wife's people, who are appellants herein, ever disputed the location of the fence. Welsh, Pruter, Boyd, and Abshier, holding under Moore, had joined to appellees' fence, and used it as a part of the inclosure to their own premises lying immediately east of the fence. Mrs. Reavis' testimony in the case corroborated, in all material respects, Mr. Reavis' testimony. G. T. Abshier testified as follows in corroboration of appellees' theory of the location of the fence:

"Q. I will ask you if you recall the occasion when Mr. Reavis was building a barn out there close to his home? A. Yes, sir.

"Q. And Mr. Moore (meaning B. T. Moore) was there and you were there, and there was a discussion about where the dividing line was between them? A. I will tell you what I know about it now. Jim Reavis settled there and he invited us to go help him raise a barn, and about the time we were getting the barn up, old Uncle Ben (meaning B. T. Moore) rode up. He was a cousin of mine. The children called him Uncle Ben like everybody calls me Uncle Gid. He rode up and he said, 'Jim, dad blame, if I don't believe you are putting that barn on my land.' He said, 'I believe you are.' So we went down to the corner and lined it up, and sure enough he had built the barn right over the line. A part of the barn was right in Ben's land. Jim came back and said, 'I will move it if you say,' and he said, 'No, it is all in the family; just let it go.'

"Q. Did you all go up there and see how it was according to the stake? A. There was a corner, but I don't remember what kind of a stake it was. They claimed that was the corner.

"Q. Who, both of them? A. Yes, sir.

"Q. At that time did Mr. Reavis have a fence north of the barn? A. He had an old rail fence there. He had what we always called a stake and rider fence up there at the time.

"Q. And when they went up there and sighted down the line, he was over the line? A. A little bit of the barn was on Uncle Ben's land; and he said, 'I will move it,' and he said 'no, let it go; it is all in the family anyway.'

"Q. That fence you are talking about, was it later extended on down to his barn; do you remember going there and seeing it? A. No, I don't remember anything more about it. They kept that fence up there all the time. * * *

"Q. And that is the only expression of either one of those men about that situation you ever heard of from that good day until now, isn't that right? A. That is the only thing I ever heard disputed about it until Ivan sued for the land.

"Q. You have no idea at all where that stake is now? A. No, I have never been back to it that I know of.

"Q. And you don't know whether that barn that is on the line fence has been moved in or anything of that kind from that time to this? A. No, but I know they recognized that as the line.

"Q. And that has been how many years ago? A. That was in 1881 or 1882. Jim had just settled there and it was the first barn he had built. He just had it all ready, and Uncle Ben came up. * * *

"Q. You do further know that he and Mr. Moore that day went up to a stake that was right there about where that fence corner was? A. Yes, sir.

"Q. You do know that Mr. Moore considered that fence on the line? A. Yes, sir. * * *

"Q. That was in 1881? A. 1881 or 1882.

"Q. That was a stake and rider fence? A. Yes."

Questions 3 and 4, copied above, were not on the weight of the evidence, nor argumentative, nor did they give undue prominence to defendants' theory of the case.

Appellants have a proposition to the effect that the testimony of Mr. Reavis as to the agreement between him and Moore locating the dividing line between the two tracts was in violation of article 3716, R. S. 1925. As this objection was not made in the lower court, the proposition presents nothing for review.

As the judgment of the lower court should be affirmed, upon the jury's verdict locating the dividing line between the two quarter sections, we pretermit a discussion of appellants' propositions of error in the submission of the issues of ten years' limitation.

Affirmed.